EDWIN M. CLARK *vs.* ROBERT ZALESKI *et al.*—(WILLIS V. ELLIOTT *et al.* Appellants, *vs.* EDWIN M. CLARK *et al.* Appellees.)

*Opinion filed December 21, 1911—Rehearing denied Feb. 9, 1912.*

1. TAXES—*redemption referred to in section 253 of the Revenue act means the redemption contemplated by section 210.* The right of redemption from a sale under a decree foreclosing a lien for taxes under section 253 of the Revenue act means the right to redeem at any time within two years from the sale, as provided in section 210 of said act and section 5 of article 9 of the constitution, and does not mean the right of redemption allowed from sales made under ordinary decrees in chancery.

2. SAME—*section 253 of Revenue law contemplates compliance with section 216 of said law.* Section 253 of the Revenue law, authorizing the foreclosure of a lien for taxes, contemplates and requires that a purchaser under the decree, before he is entitled to a deed, shall comply with section 216 of the Revenue law, relating to ordinary tax sales, by giving notice, as therein required, to all interested parties, which includes all the different classes of persons entitled to notice under said section.

3. SAME—*purpose of section 217 of Revenue law.* The purpose of section 217 of the Revenue law, requiring the purchaser at an ordinary tax sale, or his agent, to file an affidavit showing compliance with the requirements of section 216 of said law, is to furnish record evidence of certain facts which without such affidavit would rest only in the memory of witnesses, and to furnish the officer who is required to issue the deed with a basis for his action, and in case of an ordinary tax sale a deed cannot issue until such affidavit is filed.

4. SAME—*section 217 of Revenue act does not apply to a sale under a decree foreclosing tax lien.* Section 217 of the Revenue law, requiring the purchaser at an ordinary tax sale to file an affidavit showing compliance with the requirements of section 216 of said law, does not apply to a sale made under a decree foreclosing a tax lien, and in such case it is not necessary to file an affidavit showing a compliance with said section 216 before the county clerk is authorized to issue a deed after he has been ordered to do so by a court having jurisdiction to make such order.

5. SAME—*section 253 contemplates that evidence of all steps may be preserved in record of foreclosure proceeding.* It is within the contemplation of section 253 of the Revenue law that when a court of equity has acquired jurisdiction for the purpose of

foreclosing a tax lien it may retain such jurisdiction until the entire matter is consummated, and that the evidence of all the steps taken, up to the issuing of the deed, may be properly preserved in the records of the court where the proceeding is had.

6. SAME—*court of equity does not lose jurisdiction by entering decree foreclosing tax lien.* While a decree foreclosing a tax lien is final in the sense that it may be reviewed by appeal or writ of error, yet the court does not thereby lose all jurisdiction, and it has power to make all other orders necessary to carry the foreclosure decree into effect without compelling the parties to resort to another action.

7. SAME—*finding of court that provisions of section 216 have been complied with is not without jurisdiction.* Where there is a foreclosure of a tax lien it is proper for the purchaser to present to the court wherein the proceeding was had, evidence of his compliance with the law and the decree and obtain a finding of record of such compliance and that he is entitled to a deed and secure an order that the deed shall issue, and even though such findings may not be essential to the validity of the purchaser's title, they are within the jurisdiction of the court and are binding upon all the parties in a collateral proceeding.

8. SAME—*effect of foreclosure of tax lien.* Where a tax lien is foreclosed and a sale is had in pursuance of a valid decree and the purchaser complies with the law in regard to giving notice, the proceeding constitutes a new and independent title, free and clear from all previous titles and claims of every kind and character, as the statute provides that the taxes on real estate shall be a prior and first lien on such property, superior to all other liens and encumbrances.

9. SAME—*tax deeds held by parties of record are cut off by decree foreclosing tax lien.* Tax deeds held by a party to a suit to foreclose a tax lien who did not set up his interest and have it adjudicated in that proceeding are cut off by the foreclosure decree and sale thereunder, and the purchasers at such sale to whom deeds are issued are entitled to a partition of the land without reimbursing such holder for the amount he has expended.

10. LIS PENDENS—*a person acquiring interest after commencement of suit is bound by decree.* One who acquires an interest in land from the holder of a tax deed after the commencement of a suit to foreclose a tax lien and after service of summons upon such holder is bound by the final decree though not made a formal party to the record.

11. COLLATERAL ATTACK—*decree foreclosing tax lien is within the rule concerning collateral attack.* The rule that a decree can

not be attacked in a collateral proceeding except upon the ground of want of jurisdiction applies to a decree foreclosing a tax lien the same as to other foreclosure decrees, and a partition suit by the purchasers at such foreclosure sale is collateral to the foreclosure proceeding.

APPEAL from the Superior Court of Cook county; the Hon. MARTIN M. GRIDLEY, Judge, presiding.

JOHN R. O'CONNOR, MARVIN E. BARNHART, and WILLIAM GARNETT, for appellants.

ENOCH J. PRICE, JOHN S. BROWN, and SHERMAN C. SPITZER, (CHARLES L. BARTLETT, of counsel,) for appellees.

Mr. JUSTICE VICKERS delivered the opinion of the court:

This is an appeal by Jacob Glos, August A. Timke, Willis V. Elliott and William Shillaber, Jr., in his own right and as trustee, from a decree of the superior court of Cook county finding the interests of the parties, granting partition among them and appointing commissioners, rendered on a bill for the partition of fifty-three lots in the city of Chicago, wherein Edwin M. Clark was complainant and Robert Zaleski and others were defendants. The decree found that Clark and Zaleski were the owners in fee simple, in equal parts, of the premises sought to be partitioned. The errors assigned question the correctness of the finding in respect to the title of Clark and Zaleski.

The title of appellees, Clark and Zaleski, was obtained by conveyance from B. H. Collier and S. B. Tefft, whose claim of title was obtained under a sale and deed made in pursuance of a decree entered in the circuit court of Cook county in a proceeding to foreclose a tax lien in favor of the People of the State of Illinois for forfeited taxes on the premises in question, under section 253 of the Revenue act. The principal controversy between the parties relates to the validity of the proceeding to foreclose the tax lien.

2 ᵥ 3 — 5

Appellants contend that the decree granting a foreclosure of the tax lien is void for the want of jurisdiction and that the deed based thereon conveyed no title. Appellees contend that the court had jurisdiction both of the subject matter and of the parties, and that the title obtained under its decree is not open to question in a collateral proceeding, however erroneous such decree may be. Since the whole controversy depends upon the validity of the foreclosure proceeding, it will be necessary to state the history of that proceeding somewhat in detail.

It appears from the bill filed in the foreclosure proceeding that in 1891 Arthur S. Rundall was the owner in fee, except railroad right of way of the Chicago, Milwaukee and St. Paul Railroad Company, of the south-west quarter of the north-east quarter of the south-west quarter of section 35, township 40, north, range 13, east of the third principal meridian, in Cook county, Illinois; that said Rundall derived title to said premises by a regular chain of conveyances from the United States government; that said premises were at that time subject to certain trust deeds to the Northern Trust Company, and that the said Rundall, on December 2, 1891, platted the said premises into a subdivision known and described as J. R. Lane's subdivision. All of the lots involved in this suit are in said subdivision. The bill alleges that by certain conveyances Willis V. Elliott, on August 4, 1906, became the owner of twenty-three of said lots, being lots 1 to 6, 57 to 66 and 84 to 90, and that on November 20, 1905, William Shillaber, Jr., held title to thirty of said lots, being lots 10 to 13, 45 to 50, 52 to 54 and 67 to 83. It is alleged that from time to time said lots were sold to Jacob Glos for delinquent taxes and that numerous tax deeds were issued to said Glos covering all of the lots in question, and that other tax sales were made of the said premises and deeds issued thereon to the city of Chicago. These several tax sales were made at various times between September 1, 1893, down to Octo-

ber 5, 1905. The bill to foreclose the tax lien alleges that all of the above described lots were duly forfeited to the State of Illinois for the unpaid general taxes levied thereon for the years from 1900 to and including 1903. The aggregate amount of taxes, interest and penalties due at the time the bill was filed was $2588.54. On April 7, 1905, a bill was filed in the circuit court of Cook county to foreclose the statutory lien against Lynden Evans, James R. Lane, Herbert L. Bailey, Arthur S. Rundall, John Lewis, William Shillaber, Jr., Jacob Glos, Eugene H. Fishburn, the Northern Trust Company, the unknown owners of the notes described in the trust deeds to said Eugene H. Fishburn, the Northern Trust Company, and all unknown owners of the premises in question. All of the defendants to the said foreclosure proceeding were served, either by personal service of summons or by publication and mailing of notice, in accordance with the usual chancery practice. Jacob Glos, Lynden Evans, William Shillaber, Jr., and Eugene H. Fishburn personally appeared by their respective solicitors and filed answers in said proceeding. All other defendants failing to appear were defaulted. The answer of Lynden Evans alleged that he was the owner of thirty of said lots in fee, by quit-claim deeds from Arthur S. Rundall and James R. Lane; and the answer of William Shillaber, Jr., as trustee under the last will of Jason Rogers, deceased, averred that he was the owner of one of the notes of $5250 described in and secured by the trust deed to the Northern Trust Company. Fishburn's answer denied all of the allegations of the bill and asked for strict proof. Jacob Glos answered the bill, and stated that he was not informed as to the truth of any of the allegations of the said bill, "except said allegation that this defendant claims some interest in the premises described therein, and as to said last mentioned allegation this defendant admits the same, but denies that his interest in said premises was or is subject to the lien of complainant." Replications having

been filed to the several answers, the cause was referred to the master. The master took the testimony and made a report finding in favor of the complainant, and recommended a decree of foreclosure for the tax lien in accordance with the prayer of the bill. To the master's report appellant Glos filed numerous objections, all of which were overruled by the master.

On October 11, 1905, the foreclosure proceeding came on for final hearing before the court upon the bill, answers thereto and replications, and the master's report and the objections thereto, and the court made and entered a final decree of foreclosure in the cause, finding that the court had jurisdiction of the subject matter of the suit and of all the parties thereto and that the allegations of the bill were true, and specifically finding that the premises in question had been duly forfeited for unpaid taxes, as set out in the bill, and found the amount due to be $2539.07, and ordered and adjudged that unless the defendants to said proceeding, or some of them, paid said amount so found due within three days thereafter, said real estate be sold by the county treasurer of said Cook county to the highest and best bidder for cash, at his office in Chicago. The decree required that the sale should be upon notice published for three successive weeks, and that the county clerk should attend said sale and make, execute and deliver to the purchaser a certificate or certificates of sale, and that the county treasurer should make a report to said court of said sale and bring the proceeds thereof into court to abide further order. By said decree it was, among other things, further "ordered, adjudged and decreed that upon the expiration of two years from and after the date of said sale, if the premises so sold shall not be redeemed according to law, the defendants, and all persons claiming under them or any of them since the commencement of this suit, be forever barred and foreclosed of any and all rights and equity of redemption or claim of, in or to said premises or any part thereof, and in

case said premises shall not be redeemed, as aforesaid, then, upon the production to the then acting county clerk of said county of Cook, Illinois, of said certificate or certificates of sale by the legal holder thereof, said county clerk shall execute and deliver to the legal holder of said certificate or certificates a good and sufficient deed of conveyance of said premises, in conformity with the statute in such case made and provided, and that thereupon the grantee or grantees in such deed, or his or their legal representatives or assigns, be let into possession of said premises or any portion thereof, and any persons who may have come into possession under the defendants, or any of them, since the commencement of this suit, shall, upon the production of said deed of conveyance and a certified copy of the order of court confirming said sale, surrender possession of said premises to said grantee or grantees, his or their representatives or assigns, and in default of so doing a writ of assistance may issue herein, in accordance with the practice of this court." Appellant Glos prayed and was allowed an appeal from said decree but never perfected the same.

In pursuance of this decree John R. Thompson, county treasurer and collector of Cook county, duly advertised said premises for sale on December 8, 1906, by publication, for four successive weeks, of notice of such sale in the *Chicago Law Journal Weekly* and sold the same to Walter Langlois for $2050, and on December 14, 1906, made a detailed report of said sale to the circuit court, showing that he had sold said lots to said Langlois for $2050, "there being no bidder for said lots separately or in any combination less than the whole." Said report showed that the county treasurer had issued to said Langlois a certificate of sale, as directed by the decree, and that the money arising from said sale was brought into court by said treasurer. On the day said report was filed an order was made by the court approving and confirming said sale and ordering the proceeds distributed among the various officers entitled thereto.

On December 9, 1906, Walter Langlois, by endorsement in writing on the back of the certificate of sale, assigned the same to B. H. Collier and S. B. Tefft. The sale having occurred on December 8, 1906, the time of redemption expired, under the decree and under the law, December 8, 1908. Within less than five and more than three months before the time of redemption expired, Collier and Tefft caused notices to be served personally upon all persons who were defendants in the foreclosure proceeding, and caused a notice of said tax sale to be published in the *Inter-Ocean* on the third, fourth and fifth days of September, addressed to "unknown owners" and "parties interested," in addition to naming all of the persons who were defendants of record in the foreclosure proceeding, which said notices stated when the premises were sold, a description of the property sold, the years for which said premises were taxed and that said premises were not assessed in the name of any person, and when the time of redemption would expire. On October 16, 1909, being less than one year after the time of redemption had expired, the assignees of the certificate of purchase (Collier and Tefft) filed a petition in the circuit court entitled the same as the foreclosure proceeding, in which all of the preceding steps in the foreclosure proceeding were recited, and averred that the petitioners had duly published and caused to be served notices of the sale and of the expiration of the time of redemption therefrom, and prayed that the court might investigate and consider the matters and things set forth and find that petitioners had in all respects complied with the law and the decree of the court, and that the county clerk be ordered to execute and deliver to petitioners a deed vesting in petitioners, in equal parts, as tenants in common, the title in fee simple to said premises, and that the court might approve a deed of conveyance, a copy of which was submitted with the petition for the inspection and approval of the court. With the said petition were filed affidavits of

Andrew M. Strong, Clarence A. Lawson, John Zahn and M. B. Danaher, which were made a part of said petition. The affidavits attached to said petition were made by the persons who, as agents of Collier and Tefft, had served the notices of the sale, and contained a detailed statement of what each person had done in respect to serving the notices, and copies of the notices served were set out at length in the affidavits. Filed with said petition was a notice, duly entitled in said foreclosure proceeding, dated October 15, 1909, signed by said Collier and Tefft and addressed to the solicitors of record of all parties in interest, notifying them that on October 16, 1909, at the opening of court on the morning of that day, or as soon thereafter as counsel could be heard, the said Collier and Tefft would appear before his honor Judge Petit, in the court room usually occupied by him in Cook county, and present their petition for a deed upon the certificate of sale theretofore issued to Walter Langlois, and would offer affidavits and other proof in support of said petition and ask for a decree upon said petition, and notifying said parties that they could be present at the time and place named, if they so desired. As to some of the parties service of this notice was acknowledged by a receipt for a copy signed by their counsel, and as to others an affidavit of service was presented showing service by leaving copies at the office or place of business of the parties named, with some person over the age of fifteen years, in charge of the business or connected with the person for whom the notice was intended.

Upon the presentation and hearing of said petition a supplemental decree was entered by the circuit court in the said foreclosure proceeding, in which said decree it was recited that said cause came on to be heard upon the petition and affidavits attached thereto and upon testimony, proofs and exhibits offered and heard in open court, and upon argument of counsel for the respective parties the court found "that it had jurisdiction of the subject matter

herein and of all the parties thereto; that all parties to this cause have had due notice of the presentation of and hearing upon said petition and that all material allegations in said petition contained are true and proven as therein set forth." In and by said supplemental decree the court further found all of the above mentioned facts in reference to the sale of said lots, the issuance and assignment of the certificate of sale, the ownership of said lots and the several claims made thereto, the service of publication notices to redeem, and the failure to redeem from said sale,—all of which said findings were made as set forth in said petition. And the court further found in said decree "that said B. H. Collier and S. B. Tefft have duly complied with all of the requirements of the constitution and laws of Illinois in regard to the issuance of tax deeds upon sales in tax forfeiture proceedings and have also complied with the terms and conditions of the decree heretofore entered herein, and that they are entitled to have issued to them a deed of conveyance vesting in them, in equal parts, as tenants in common, the title to said above described premises and every part thereof." The decree also ordered and directed the county clerk to issue to said Collier and Tefft a deed, a copy of which was presented to and approved by the court, conveying to said petitioners, as tenants in common, all of the premises described in the foreclosure proceeding. No appeal has ever been prosecuted either from the original decree of foreclosure or from the supplemental decree of October 16, 1909, and said decrees still remain in full force and effect.

On the 16th day of October said Collier and Tefft surrendered to Joseph F. Haas, county clerk of Cook county, the certificate of purchase and received a deed from said clerk for said premises. On October 23, 1909, Collier and wife, in consideration of $2500, sold and conveyed Collier's undivided one-half of the premises in question to the appellee Edwin M. Clark, and on April 20, 1910, the said

S. B. Tefft, in consideration of $2000, sold and conveyed her undivided one-half of the premises in question to appellee Robert Zaleski. Under these proceedings appellees Clark and Zaleski claim to be the owners in fee of the premises and entitled to a partition thereof between themselves, and that all right, title or interest of appellants is barred and forever foreclosed by the decree of foreclosure and supplemental decrees made thereafter.

Appellants contend that all of the requirements of law in relation to the sale of real estate for the non-payment of taxes apply as well to sales made under a decree foreclosing a tax lien as to ordinary sales made by the collector of taxes in pursuance of a judgment of the county court; that the requirements of the law were not complied with in this case, and that the supplemental decree of October 16, 1909, finding that the statute had been complied with in all respects, is void for the want of jurisdiction and not binding upon appellants in this or any other proceeding, and that, these propositions being established, the appellees' title under the foreclosure proceeding is to be regarded merely as an ordinary tax title derived through a collector's sale, and is open to all of the objections that might be interposed to such title.

Sections 4 and 5 of article 9 of the constitution of 1870 are as follows:

"Sec. 4. The General Assembly shall provide, in all cases where it may be necessary to sell real estate for the non-payment of taxes or special assessments for State, county, municipal or other purposes, that a return of such unpaid taxes or assessments shall be made to some general officer of the county having authority to receive State and county taxes; and there shall be no sale of said property for any of said taxes or assessments but by said officer, upon the order or judgment of some court of record.

"Sec. 5. The right of redemption from all sales of real estate for the non-payment of taxes or special assessments

of any character whatever, shall exist in favor of owners and persons interested in such real estate, for a period of not less than two years from such sales thereof. And the General Assembly shall provide by law for reasonable notice to be given to the owners or parties interested, by publication or otherwise, of the fact of the sale of the property for such taxes or assessments, and when the time of redemption shall expire: *Provided,* that occupants shall in all cases be served with personal notice before the time of redemption expires."

To carry out the above constitutional provisions the legislature has imposed conditions, by section 216 of the Revenue law, with which the purchaser of real estate for delinquent taxes must comply before he will be entitled to a deed. These conditions relate mainly to the matter of serving notices upon various persons, such as the person in possession of the premises, the owner or parties interested, the person in whose name the property was taxed, and all other persons interested who may upon diligent inquiry be found in the county, and the section provides, under certain conditions, for a service of notice by publication. In the case of an ordinary sale of real estate for a delinquent tax a strict compliance with all of the requirements of section 216 must be shown or a tax deed issued in pursuance of such sale will be declared void. Section 217 of the Revenue law provides that every such purchaser or his assignee, either by himself or agent, shall, before he shall be entitled to a deed, make an affidavit of his having complied with the conditions of section 216, stating particularly the facts relied on as such compliance, and deliver such affidavit to the person authorized by law to execute such tax deed, and provides that said affidavit shall be *prima facie* evidence that the required notices have been given. Said section provides that false swearing in such affidavit shall be deemed perjury and punished accordingly. There was no attempt on the part of appellees to comply with section 217 by filing

an affidavit with the county clerk before the deed under which they claim was issued. If that section of the Revenue law applies to a foreclosure sale for forfeited taxes made in pursuance of section 253 of the Revenue law, and appellants are in a position to raise that question, the decree for partition is erroneous and will have to be reversed because appellees, Clark and Zaleski, are not the owners in fee of the premises.

Section 253 of the Revenue law, under which the foreclosure proceeding was had, is as follows: "The taxes upon real property, together with all penalties, interests and costs, that may accrue thereon, shall be a prior and first lien on such real property, superior to all other liens and encumbrances, from and including the first day of May in the year in which the taxes are levied until the same are paid; which lien may be foreclosed in equity in any court of competent jurisdiction in the name of the People of the State of Illinois, whenever the taxes for two or more years, upon the same description of property, shall have been forfeited to the State, and may be sold under the order of the court by the person having authority to receive State and county taxes, with the same notice to interested parties and right of redemption from said sale, as is now provided by law, and in conformity with sections four (4) and five (5) of article 9 of the constitution of this State."

So far as we are advised, no case has heretofore been decided by this court giving a construction to the provision in section 253 that real estate may be sold under a decree of foreclosure for forfeited taxes, "with the same notice to interested parties and right of redemption from said sale, as is now provided by law, and in conformity with sections 4 and 5 of article 9 of the constitution of this State." Appellants contend that the language in regard to notice to interested parties and right of redemption from the sale *"as is now provided by law,"* refers to the provisions in section 216 of the Revenue law and by clear im-

plication includes section 217, which requires the filing of an affidavit before a deed can be issued. Appellees contend that the language above quoted may with propriety be held to refer to those provisions of the Chancery act relating to notice and redemption from sales made under decrees in other chancery proceedings.

Section 253, as originally passed in 1872, merely provided that taxes assessed upon real property should be a lien thereon from and including the first day of May in the year in which they are levied, until the same are paid. (Rev. Stat. 1874, p. 899.) Under this statute providing for a lien on real estate for taxes a bill in equity was filed in the Madison county circuit court to foreclose a lien for $9000 of taxes on lands that had been forfeited to the State. A demurrer was sustained to the bill and the bill dismissed. The case came to this court and was decided at the November term, 1880. The decree dismissing the bill was affirmed. (*People* v. *Biggins,* 96 Ill. 481.) This court there held that the lien given by section 253 was purely statutory and could only be enforced in the modes provided by the statute, and that a court of equity had no jurisdiction to foreclose the lien. In concluding the discussion of that case, this court, speaking by Mr. Justice Craig, on page 486, said: "If our Revenue law is defective, it is the duty and business of the legislature to amend it. Courts are powerless to interfere. They cannot make, but can only construe, laws after they are made by the legislature. If it is wise and proper that our revenue should be collected by bill in chancery, which we by no means concede, then the legislature should confer the jurisdiction upon that court, but until that is done we perceive no ground upon which we can hold that resort can be had to that tribunal." At the next session of the legislature after the decision in the *Biggins case* section 253 was amended so as to provide, as said section now does, for the foreclosure of such tax lien in equity. (Laws of 1881, p. 130.) After the section

was amended another bill was filed against Biggins, and a decree foreclosing the lien was affirmed by this court in *Biggins* v. *People,* 106 Ill. 270.

Section 216, substantially in its present form, was enacted in 1872 and was a part of the Revenue law when section 253 was amended, in 1881, and may therefore have been' what the legislature had in mind when it provided in section 253 for the sale of lands under an order of court, "with the same notice to interested parties and right of redemption from said sale, *as is now provided by law."* It will be noted that the provision in said section for "notice to interested parties" is connected by the conjunction "and" with the "right of redemption from said sale, as is now provided by law," which is followed immediately by the words, "and in conformity with sections 4 and 5 of article 9 of the constitution of this State." By reference to sections 4 and 5 of article 9 of the constitution it will be seen that the right of redemption from tax sales exists for two years from the date of sale. Section 210 of the Revenue law of 1872 provided that real property sold under the provisions of that act might be redeemed at any time before the expiration of two years from date of sale. The right of redemption for two years being a constitutional right, it cannot be inferred that the legislature intended to make an unconstitutional attempt to shorten the period of redemption, by section 253, to the fifteen months allowed for the redemption of real estate sold under other decrees in chancery in pursuance of the Chancery act. We must therefore hold that the "redemption" referred to in the amendatory act of 1881 was the right of redemption secured by section 210 of the Revenue act and section 5 of article 9 of the constitution. If the right of redemption referred to in section 253 is the constitutional and statutory right to redeem within two years from the date of sale, then it is a 'fair and reasonable inference that the "notice to interested parties" refers to the notice required by sec-

tion 216 of the Revenue law, and not the notice required
under the Chancery.act. The notices required by section
216 of the Revenue law must be given not less than three
months nor more than five months before the time of re-
demption expires. The object of the notice is to give all
persons having a right to redeem an opportunity to do so.
In our opinion the provision for "notice to interested par-
ties" and "right of redemption" as "is now provided by
law," in section 253, refers to the Revenue law and not to
sales made under any other law.

It follows from what has been said, that section 253
contemplates and requires that a purchaser under a decree
foreclosing a tax lien shall, before he is entitled to a deed,
comply with section 216 of. the Revenue law in regard to
giving notice. We are also of the opinion that the words
"interested parties," in section 253, are used in a general
sense, and include all of the different classes of persons who
are entitled to notice under section 216. Section 216 was
manifestly enacted in the interest of the owners and other
persons interested in real estate which was sold for taxes,
and is intended to afford such persons every opportunity
to redeem from said tax sales and thus save a sacrifice
of their property for a nominal sum. Section 217 of the
Revenue law, which requires the purchaser or his agent to
file an affidavit with the person authorized by law to exe-
cute such tax deed, differs in several respects from section
216. This section has nothing to do with the land owner's
right to redeem. The affidavit is not made until after the
time for redemption has expired. The primary object of
section 217 is to make record evidence of certain facts
which without such affidavit would rest only in the mem-
ory of witnesses. The affidavit is also designed to furnish
the county clerk or officer who is required to issue the deed
with a basis for his action. The duty to issue the deed does
not arise and cannot legally be exercised under an ordi-
nary tax sale until the affidavit is filed. The language of

section 217, "every such purchaser or his assignee," etc., refers to persons who might become purchasers at the ordinary tax sale under the law as it existed prior to the amendment of section 253. As we have already attempted to show, a court of equity had no jurisdiction to order a sale until section 253 was amended, so the words "every such purchaser," enacted in 1872, do not necessarily include purchasers at foreclosure sales in equity, which were not authorized until section 253 was amended, in 1881. There is nothing in the language of section 253 which can be construed as requiring a compliance with section 217. The legislature manifestly contemplated that when a court of equity acquired jurisdiction for the purpose of foreclosing a tax lien it would retain such jurisdiction until the entire matter was consummated, and that the evidence of all the steps taken, up to the issuing of the deed, would be properly preserved in the records of the court wherein such proceeding was being had, and that there was therefore no necessity for requiring an affidavit to be filed with the person authorized to issue the deed, thus leaving the record of the foreclosure proceeding incomplete, and making it necessary to supplement such proceeding by proof that an affidavit was filed with the county clerk. Our conclusion on this point is, that section 217 of the Revenue law has no application whatever to a sale made under a decree foreclosing a tax lien, and that in such case it is not necessary to file an affidavit showing a compliance with section 216 before the clerk is authorized to issue a deed after he has been ordered to do so by the decree of the court having jurisdiction to make such order.

Appellants contend that the decree of October 16, 1909, finding that the appellees, Clark and Zaleski, had complied with all of the requirements of section 216 and that they were entitled to a deed vesting them with the fee simple title, is void for the want of jurisdiction and is therefore open to collateral attack; that such finding is not binding

upon anyone, and that the question whether appellees had so complied with section 216 is open for determination in this proceeding. Upon this assumption appellants point out several matters in respect to which they claim the statute was not complied with. Appellants' argument on this point is, that the original decree foreclosing the lien and ordering a sale of the premises became final when the term at which such decree was rendered adjourned, and that, even if the court had jurisdiction in the first instance, the jurisdiction ended with the adjournment of the term at which such final decree was rendered, and that before the court would be authorized to again take jurisdiction of said cause it would be necessary to commence an original proceeding and again summon the parties before the court in the same manner in which they were brought before the court in the first instance. That the foreclosure decree was final in the sense that it might have been reviewed by appeal or writ of error we have no doubt, but we cannot lend our assent to the claim that the court lost jurisdiction, for all purposes, of said cause when the decree foreclosing the tax lien was rendered. While the lien upon real estate for taxes, as well as the jurisdiction of equity to foreclose the same, exists only by virtue of the statute, it would be a very narrow and strict construction to hold that the power of a court of equity was limited to the single act of entering a decree foreclosing such lien. The jurisdiction to foreclose the lien necessarily implies jurisdiction to make all other orders and decrees necessary to fully carry into effect the jurisdiction granted. Such, in effect, was the holding of this court in *Hammond* v. *People,* 178 Ill. 503. In that case an appeal was prosecuted from an order approving a deed and an order directing possession of the premises sold to be delivered to the purchaser in a proceeding to foreclose a tax lien under section 253 of the Revenue act. This court, on page 504, said: "So long as the proceeding is pending before a court of chancery that court has juris-

diction and power to approve a deed made under such de-
cree, and to carry out its decree by placing the purchaser
in possession where there has been proper notice and de-
mand for possession.    Under a judicial sale, where a *bona
fide* purchaser has been guilty of no fraud or collusion in
the procurement of the decree or in a sale thereunder but
purchases in good faith for value, he cannot be disturbed
or divested of his title because of error in the decree under
which the sale was made,"—citing *Wadhams* v. *Gay,* 73
Ill. 415, *Sibert* v. *Thorp,* 77 id. 43, and *Swift* v. *Yanaway,*
153 id. 197.

The jurisdiction of the court to approve a deed made
under its decree requires the court to inquire into and de-
termine whether the party claiming the right to such deed
has complied with section 216 of the Revenue law in re-
gard to the giving of notices therein required before the
time of redemption expired.    A court of equity having
obtained jurisdiction of an action for the foreclosure of a
mortgage or other lien, and having decreed a sale of the
premises, will retain its jurisdiction for the purpose of
making any auxiliary orders necessary to carry into effect
its former decree without compelling the party to resort
to another action.    (27 Cyc. 1739; *Vahle* v. *Brackenseik,*
145 Ill. 231.)    We perceive no reason, on principle, why
the same rule should not apply to proceedings to foreclose
a lien for taxes under the statute.    Since, as we have seen,
it is necessary for the purchaser at such foreclosure sale
to comply with section 216 in regard to serving notices and
is not required to preserve the evidence of such compliance
by filing an affidavit under section 217, the court of chan-
cery wherein the proceeding is pending is necessarily the
proper tribunal to determine whether said section 216 has
been complied with and to make a finding in regard to that
question, in order that all matters affecting the title to the
real estate involved may appear of record.    This course
was pursued in the foreclosure proceeding now under con-

253 — 6

sideration. After the period of redemption had expired, appellees, who were the owners of the certificate of purchase, upon notice to appellants came into the court of equity wherein the decree of foreclosure had been rendered and presented a petition showing what had been done as a compliance with section 216 of the Revenue law. The decree of court entered upon this petition has already been set out in the preceding statement. The decree finds that the court had jurisdiction and that appellees had complied with the law entitling them to a deed. This finding in a collateral proceeding must be regarded as conclusive and binding upon all parties to the record and their privies. Appellants were parties to the original foreclosure proceeding and were duly notified of the filing of the petition upon which the supplemental decree was entered.

While we think it entirely proper that a purchaser at a foreclosure sale should apply to the court wherein the decree was rendered, either by motion or petition, and present evidence, as was done in this case, of a compliance with the law and the decree and obtain a finding of record of such compliance and that such purchaser was entitled to a deed and secure an order that such deed issue, still, if there was a valid decree and sale, and the purchaser had, in fact, complied with section 216 of the Revenue law, we do not hold that such auxiliary findings and order are essential to the validity of his title. The practical advantages of such course are apparent. Such an order, being within the jurisdiction of the court, is binding upon parties and privies, and precludes them from afterwards re-litigating all questions that were or might have been raised in such proceeding. The partition suit is collateral to the foreclosure proceeding. (VanFleet on Collateral Attack, secs. 4, 5.) This being true, the only ground upon which such decrees can be successfully attacked is want of jurisdiction. (*Springer* v. *Darlington,* 198 Ill. 121; *Sielbeck* v. *Grothman,* 248 id. 435.) The above principle applies to decrees

foreclosing tax liens the same as to other judgments and decrees. (*Hammond* v. *People, supra.*)    By the statute taxes on real estate are expressly made "a prior and first lien on all such real property, superior to all other liens and encumbrances," and when such lien is foreclosed and a sale is had thereunder in pursuance of a valid decree and such purchaser complies with the law in regard to giving notice, such proceeding constitutes a new and independent title, free and clear from all previous titles and claims, of every kind and character. *Cooper* v. *Corbin,* 105 Ill. *224;* *South Chicago Brewing Co.* v. *Taylor,* 205 id. 132; Cooley on Taxation, sec. 546; 37 Cyc. 1143.

Substantially all of appellants' argument is in support of objections made on the assumption that the foreclosure proceeding is open to collateral attack.   Since, as we have seen, this assumption is not warranted, it is not necessary that the objections argued should be considered.

Appellants insist that it was error in the court to decree partition without ordering appellees to reimburse Glos for the amount of his tax sales and subsequent taxes.   Numerous cases are cited holding that a decree setting aside a tax deed should require reimbursement as a condition of relief.   There is no doubt of the rule contended for, but it can have no application here.   The partition decree did not set aside any tax deeds that Glos or anyone else might have had.   All such tax deeds held by parties to the record were cut off by the foreclosure decree and the sale thereunder. In the very nature of things a sale under a foreclosure of a "first and superior lien" could not be made subject to any prior lien or encumbrance.   One of the purposes of providing for a foreclosure, in equity, of tax liens was to enable the State to collect, by sale, a part of the taxes which were a lien against the property.   The theory of the law is, that a sale under such foreclosure is made in full satisfaction of all previous tax liens and encumbrances, and that the purchaser will not be required to pay or discharge

any liens or encumbrances above the amount of his bid. It would be absurd to say that a purchaser under such sale would take the land subject to all prior tax liens. If this were true, there would be no advantage in foreclosing such liens over a purchase for the full amount due at an ordinary tax sale. Again, if appellant Glos had any lien upon or other interest in the premises that was not subject to the tax lien being foreclosed, being a party to the foreclosure proceeding it was his duty to set up such lien or interest and have it adjudicated and settled in the foreclosure proceeding. Having failed to do so and having acquiesced in a decree finding that he had no such interest he is now barred by such foreclosure decree from making such claim in this suit. There was no error in refusing to make the reimbursement of Glos a condition of relief in the partition suit.

Appellants make the further contention that Emma J. Glos was a necessary party to the foreclosure proceeding, and that the court erred in proceeding to a final decree after she had been dismissed out of the case. Emma J. Glos has not appealed. She is not complaining of the decree. Whether the decree is binding upon her is a matter of which the other appellants cannot complain. This is a sufficient answer to this assignment of error without reference to others that might be made. A similar complaint is made because August A. Timke was not a party to the foreclosure case. Whatever interest Timke may have had in the premises was acquired by a trust deed executed by Jacob Glos after the commencement of the foreclosure proceeding and after service of summons upon Jacob Glos. His interest having been acquired after the commencement of the suit from a party to the record, he is bound by the decree without being made a formal party.

Finding no error in this record the decree of the superior court of Cook county is affirmed.

*Decree affirmed.*